UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-304-GWU

CONLEY THOMPSON,                                                        PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI).  The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

1

07-304  Conley Thompson

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience."  Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

2

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron

07-304  Conley Thompson

v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence

to support the Commissioner's decision may be produced through reliance on this

expert testimony only if the hypothetical question given to the expert accurately

portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of

Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Conley Thompson, was found by an Administrative Law Judge

(ALJ) to have a "severe" impairment due to discogenic and degenerative disorders

of the back.  (Tr. 15).  Nevertheless, the ALJ found that Mr. Thompson retained the

residual functional capacity to perform "medium" level exertion with occasional

stooping, crouching, and climbing of ladders, ropes, and scaffolds, and proceeded

to apply Rule 203.28 of the Commissioner's Medical-Vocational Guidelines (the

"grids"), applicable to a person of Mr. Thompson's age, education, and work

experience, which directs a conclusion of "not disabled."  (Tr. 18-22).  Accordingly,

the ALJ determined that he was not entitled to benefits.  The Appeals Council

declined to review, and this action followed.

On appeal, this court must determine whether the administrative decision is

supported by substantial evidence.

The plaintiff filed his current SSI application on October 5, 2005.  (Tr. 46-51).

A prior application was denied in an ALJ decision dated September 10, 2005 and

this court affirmed the ALJ's decision in a Memorandum Opinion and Order dated

November 15, 2006.  Thompson v. Barnhart, London Civil Action No. 05-679-GWU (E.D. Ky.).   The current ALJ therefore considered disability only for the unadjudicated period beginning September 11, 2005.  (Tr. 13).[1]

Mr. Thompson testified that he was unable to work because of back pain and "nerves."  (Tr. 500).   He stated that, following the denial of his previous SSI application, he had looked for work and had obtained a job as a semi-truck driver for a wholesale grocer on November 15, 2006.  (Tr. 497-8).  In order to obtain this job, he had applied for and received a commercial driver's license (CDL) after passing a physical examination.  (Id.).[2]  The job had involved driving the truck from a warehouse in London, Kentucky, sometimes as far as Tennessee or West Virginia.  (Tr. 508).  Mr. Thompson stated that loading and unloading the truck was usually done with a forklift, but some locations required him to unload himself, using a "pallet jack."  (Tr. 510).  He injured his back unloading a pallet, and had stopped

---

[1]The ALJ found that there had been no significant change or deterioration in the plaintiff's medication condition since the previous decision, and implied that he accepted the prior residual functional capacity findings in accordance with Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997) and Acquiescence Ruling 98-4(6).  As noted in the court's prior opinion, the ALJ in 2005 did find identical physical limitations, but had also found that Mr. Thompson needed to avoid jobs requiring interaction with the general public, that he was unable to perform work requiring attention and concentration for extended time periods, and needed to be able to miss work one day a month, and occasionally two days a month.  Thompson v. Barnhart, supra, slip op. at 6.

[2]Although a copy of the license itself is not in the court transcript, the ALJ indicated at the hearing that it had been issued on November 29, 2005 (Tr. 497), only a few weeks after the plaintiff's current SSI application was filed.

working as a result.  (Tr. 496).  He had been told that he had bulging discs and a pinched nerve which caused pain going to his right leg.  (Tr. 500).  In addition to these physical problems, he was being seen at a Comprehensive Care Center (CCC) for a nervous problem, and had been going for approximately a year at the time of the March 15, 2007 hearing.  (Tr. 502).

Some of the medical evidence in the transcript from the period prior to the plaintiff's current application shows that he had previously been diagnosed with chronic low back pain.  (Tr. 172, 241).  X-rays of the lumbosacral and thoracic spine taken on October 5, 2005, the date of the current application, showed no abnormalities other than high degrees of scoliosis in the thoracic spine.  (Tr. 249-50).  X-rays of both knees taken three months earlier showed no significant degenerative changes.  (Tr. 252).  However, cervical spine x-rays from April, 2005 suggested mild foraminal encroachment at C5-6.  (Tr. 255).  MRIs of the thoracic and lumbosacral spine in November, 2005 showed degenerative disc disease but no herniation.  (Tr. 377, 392).

Dr. Stephen Nutter conducted a consultative physical examination of Mr. Thompson on December 8, 2005.  (Tr. 261).  Dr. Nutter concluded that the plaintiff had chronic cervical and lumbar strain and arthalragias based on range of motion abnormalities of the cervical and lumbosacral spine.  (Tr. 264).  However, the findings were not consistent with nerve root compression.  (Id.).

07-304  Conley Thompson

Office notes from Dr. Maria Cristina Atienza, the plaintiff's treating family physician, indicate that he was treated for complaints of neck and back pain in 2005 and 2006, primarily with medications; he refused a referral to an orthopedic surgeon.  (Tr. 317, 323-4, 328).  A nurse practitioner noted on September 22, 2005 that the plaintiff reported being able to lift and carry less than ten pounds, and that he was unable to walk for more than ten to fifteen minutes at a time or sit for extended periods due to back pain, and that joint pain in his fingers and wrists was interfering with his ability to write.  (Tr. 317).  Objective findings were tenderness at the L4-S1 level and in the cervical spine.  (Id.).  The practitioner indicated that she had completed medical opinion paperwork after "obtaining subjective information from the patient regarding limitations."  (Id.).  Other notes from this office through January, 2007 show continued prescriptions for pain medication and treatment for a variety of transient conditions as well as insomnia.  (Tr. 426-39).  No specific functional restrictions are given.

On February 6, 2007, the plaintiff was treated at the Manchester Memorial Hospital emergency room for low back pain which had occurred while he was unloading a truck.  (Tr. 475).  He had a reduced range of motion in the lumbar spine, but normal motor and sensory functions.  (Tr. 476).  An x-ray showed no acute abnormality.  (Tr. 478).  He was given medication and advised to follow up with his family doctor.  (Tr. 479).

7

07-304  Conley Thompson

A new MRI was obtained on February 19, 2007 showing asymmetric bulging at L5-S1 resulting in mild posterior displacement of the S1 nerve root and bulging at L4-L5 which flattened the sac.  (Tr. 443).  Subsequently, the plaintiff started physical therapy on March 2, 2007 and it was noted that he had mild to moderate tenderness to palpation at several lumbar levels and a guarded gait with decreased sensation in the right leg but normal reflexes.  (Tr. 485-6).  His forward flexion was limited to only 20 degrees.  (Tr. 484).  Shortly thereafter, he was examined by Dr. Suzanne Dansereau for a worker's compensation evaluation.  (Tr. 456).  Her examination showed tenderness in the entire lumbosacral area and pain in the low back with movement of the sacroiliac joints.  (Tr. 457).  Sensation was reduced in parts of the right foot but reflexes were normal.  (Id.).  Dr. Dansereau reviewed the MRI report and apparently reviewed a report from "Dr. Tutt" who had concluded that the plaintiff had underlying degenerative changes and osteoarthritis with slight bulging but no mention of nerve root impingement.  (Id.).  Reportedly, the physician had suggested a diagnosis of strain/sprain and expressed "curiosity about why he is taking so long to recover."  Dr. Dansereau felt that his examination suggested muscle-related symptoms only.  She did not give any functional restrictions and suggested that Mr. Thompson follow up as needed.

No physician suggested any specific functional restrictions during the relevant period, apart from state agency physicians who reviewed a portion of the evidence in 2006 and concluded that the plaintiff could perform medium level

8

exertion and had no non-exertional restrictions.  (Tr. 294-300, 413-19).  The plaintiff suggests on appeal that the ALJ did not properly consider his subjective allegations of pain but a review of the ALJ's decision shows that he did so in detail.  (Tr. 20). While there is medical evidence that the plaintiff may have possibly sustained an additional injury shortly before the administrative hearing, there is no proof that the residuals of this problem would have continued for 12 months continuously, even if specific limitations greater than the ALJ's findings had been supplied by the plaintiff.  Accordingly, the evidence supports the ALJ's adoption of the physical restrictions from the prior administrative decision.

It is noteworthy, however, that the ALJ applied the "grids" in a case with significant non-exertional impairments.  As noted in the Applicable Law section of this opinion, significant non-exertional impairments require the ALJ to use the grids only as a "framework" for decision-making.  Abbott, 905 F.2d at 926.  Social Security Ruling (SSR) 85-15 provides that some stooping and crouching are required in almost any kind of work, and an individual must be able to do these activities "frequently" for more medium and heavy jobs.  SSR 85-15, p. 7.  The Ruling also states that, while some limitation in climbing alone would not ordinarily have a significant impact on the "broad world of work," it implies that consultation with a vocational expert may be necessary in more complex situations.

Recognizing that the use of the grids was inappropriate, the defendant points to the prior administrative hearing, in which a Vocational Expert (VE) was given a

hypothetical question including the non-exertional restrictions found in the present case, along with mental restrictions of an inability to perform work requiring extended attention and concentration or perform jobs requiring significant interaction with the general public.  Thompson v. Barnhart, supra, slip op. at 6.  While the VE's testimony suffices as far as the physical non-exertional restrictions are concerned, it does not take all the possible mental limitations into account.

As the plaintiff points out, Dr. Kevin Eggerman, an examining psychiatrist, concluded that Mr. Thompson had a generalized anxiety disorder and assigned a Global Assessment of Functioning (GAF) of 55-60, reflecting "moderate" symptoms per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  (Tr. 269-70).  In addition to a moderately limited ability to understand, remember, and carry out detailed instructions, Dr. Eggerman suggested a mildly to moderately limited ability to interact with the public, supervisors, and co-workers and respond appropriately to work pressures in a work setting. (Tr. 270).  State agency reviewing psychologists reviewed the evidence and concluded that Mr. Thompson would be moderately limited in his ability to understand, remember, and carry out detailed instructions, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, and respond appropriately to changes in the work setting.  (Tr. 288-9, 407-8).  The ALJ did not mention these findings, much less provide a rationale for discounting them.  20 C.F.R § 416.927(f)(2)(i) provides that the findings

07-304  Conley Thompson

of state agency consultants must be considered by ALJs.   Finally, Dr. John Schremly, a psychiatrist who treated the plaintiff at the CCC, had assessed a major depressive disorder with a GAF of 55 (Tr. 447), suggesting "moderate" restrictions in line with Dr. Eggerman.  Dr. Schremly also prescribed medications for depression and sleeplessness.   (Id.).   The only rationale given by the ALJ for finding no "severe" mental impairment, apart from Mr. Thompson not requiring emergency care or inpatient treatment, was that he failed to return to the CCC after three visits.  (Tr. 20).  However, the Sixth Circuit has noted that it is "questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989).[3]

In view of the mental restrictions listed by the state agency sources which were not discussed, and the consistent GAF scores from the examiners, a remand will be required for additional consideration.

This the 18th day of June, 2008.



**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**

---

[3]The Blankenship court also noted that it is common to diagnose mental disorders after one interview.  874 F.2d at 1121.

11